**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIMINAL ACTION NO. H-09-695** |
| | § | |
| **JUAN ISAIS ESPARZA; aka JUAN** | § | |
| **ESPARZA ISAIS; aka JUAN ISAIS** | | |
| **ESPARZA JR; aka JUAN ISAIS** | | |

## MEMORANDUM AND ORDER

Defendant Juan Isais Esparza stands charged of having illegally re-entered the United States after having been convicted of an aggravated felony and having been deported. The only issue as to which the Government and Defendant disagree is whether Defendant was an alien when he re-entered the United States.

The issue of whether Defendant was an alien depends, in turn, on whether Defendant derived citizenship from his naturalized father. In order to derive citizenship from a naturalized parent, a child's parents must have been legally separated, one (but not both) of the parents must have become a naturalized citizen, and that naturalized parent must have had legal custody of the child. 8 U.S.C. § 1432(a). The statute provides, in relevant part:

> (A) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> . . .
>
> (3) the naturalization of the parent having legal custody of the child when there has been a legal separation the parents . . . ; and if
>
> (4) such naturalization takes place while the child is under the age of eighteen years;

(5) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (1994).

## I.    FACTS

The following facts are agreed, except as noted.  The Defendant was born on September 2, 1976.   Defendant's father became a naturalized citizen in 1989. Defendant's parents were divorced on June 14, 1994. Defendant was admitted as a legal permanent resident before 1994.  The parties dispute whether the original divorce decree ("1994 Decree") granted custody of Defendant, who was 17 at the time, to his mother or father. The language of the 1994 Decree clearly recites that Defendant's mother was to have custody, but Defendant contends that the written Decree did not properly reflect the court's oral pronouncement, which was that Defendant's father was to have custody of him.  On January 15, 2010, a *nunc pro tunc* divorce decree ("Amended Decree") was issued by a state court, in the same county that issued the 1994 Decree, decreeing that custody of Defendant had been granted to his father.

## II.    CONTENTIONS OF THE PARTIES

Defendant argues that the Amended Decree should govern as to the issue of Defendant's citizenship, while the Government argues for the 1994 Decree.  In further support of his argument that the court's oral ruling in 1994 was that custody was awarded to Defendant's father, as reflected in the Amended Decree, Defendant also contends that, 1994 Decree contains inconsistencies concerning child support payments that suggest that the parties believed that the father, not the mother, was to have custody.  Defendant also notes that, in Texas, a judgment *nunc pro tunc* is  available only to correct a clerical error

in a previously rendered ruling, not a judicial one, thus lending further support to the notion that the court's original ruling was that the father was to have custody. Finally, Defendant argues that, because alien status is an element of the offense with which Defendant is charged,  it is the Government and not the Defendant who bears the burden of proof in establishing that Defendant is an alien.

The Government maintains that this very issue has already been addressed in *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006), and *Fierro v. Reno*, 217 F.3d 1 (1st Cir. 2000). The Government further notes that the *nunc pro tunc* divorce decree was not filed until after Defendant was charged with illegal re-entry.  The 1994 Decree, the Government correctly notes, was in effect when Defendant turned 18. Accordingly, the Government believes the 1994 Decree should control, and it clearly provides that the Defendant's mother was the "Managing Conservator" of all five minor children, including Defendant. The Government further points out that Defendant and his four siblings were ordered to live with the mother, with the father paying child support.

### III.   ANALYSIS

In *Bustamante,* the Fifth Circuit considered similar facts, but with the admission by the attorney who obtained the *nunc pro tunc* divorce decree that the purpose for seeking the order was "to satisfy requirements of the Department of Immigration and Naturalization" vis-a-vis the defendant. 447 F.3d at 391.  In ruling against defendant, the Court of Appeals explicitly noted that the divorce decree was amended for the sole purpose of blocking the defendant's removal, and therefore agreed "with the First Circuit [in *Fierro*] that relying on such a *nunc pro tunc* order to recognize derivative citizenship would create the potential for significant abuse and manipulation of federal immigration

and naturalization law." *Id.* at 401. Nonetheless, the *Bustamante* court also noted that "there could be a situation in which a *nunc pro tunc* decree could enhance an alien's claim of derivative citizenship" in circumstances where "such a decree would legitimately demonstrate that an alien child had in fact been in the sole custody of his one naturalized parent prior to his eighteenth birthday." *Id.*

In *Fierro*, the First Circuit confronted the issue as a matter of first impression and declined to treat the *nunc pro tunc* decree as controlling.  The court there noted that "[t]here is no suggestion that the original custody decree was entered by mistake, was contrary to law, or otherwise did not reflect the true legal relationship between Fierro and his parents at any time during his minority."  217 F.3d at 6.

Differences exist between this case and both *Bustamante* and *Fierro.*  Unlike *Bustamante*, there is no direct evidence that the Amended Decree was obtained only to satisfy immigration requirements.  Unlike *Fierro*, Defendant does offer some evidence that the original custody decree was entered by mistake, and that the court did mean to award custody to Defendant's father in 1994.

### A.    The 1994 Decree

Nonetheless, the Court is unable to reach a conclusion different from those reached in *Bustamante* and *Fierro*.  The Court accepts the 1994 Decree as presumptively valid, and the language of the 1994 Decree makes clear that, immediately prior to his eighteenth birthday, official custody of Defendant and his four siblings was granted to his mother. Defendant has adduced only scant proof that there was a variance between the Court's oral ruling and that which appears in that original decree.  A conclusory affidavit from Defendant's father does claim that the father had custody after the divorce, but the

affidavit is missing critical dates and the Court is unable to rely upon it.  The Court also notes that, even if Defendant may have been living with his father at pertinent times, that does not, by itself, mean that official custody was different from that set forth in the 1994 Decree.  Therefore, under the clear terms of the 1994 Decree, Defendant was in the custody of his un-naturalized mother at the time of this eighteenth birthday.

### B.     The Amended Decree

The Court now considers the effect of the Amended Decree. At trial, counsel for Defendant argued that, because these are criminal proceedings rather than removal proceedings, the burden of proof remains with the Government as to each element of this offense. Because in Texas a judgment *nunc pro tunc* is available only to correct a clerical or documentation error in a previously rendered ruling, argued Defendant, the issuance of the Amended Decree is sufficient to create reasonable doubt as to Defendant's alienage. In other words, Defendant avers that the existence of the Amended Decree means that this Court can and should recognize Defendant's derivative citizenship for purposes of the charged offense.

The Court, however, is not persuaded by this argument.  *Bustamante* and *Fierro* make clear that, regardless of the effect of *nunc pro tunc* decrees for purposes of family law, federal courts must independently assess the weight to be given such decrees for purposes of federal immigration law. In other words, the fact that a *nunc pro tunc* has been issued does not render it automatically controlling for purposes of establishing derivative citizenship. *See Bustamante*, 447 F.3d at 400 (noting that federal naturalization law exists independent of state family law, and holding that a federal court is not required to accord a state decree conclusive effect for purposes of citizenship determinations);

*Fierro*, 217 F.3d at 6 (noting that state courts should not be permitted, through *nunc pro tunc* orders, to modify or create loopholes in federal immigration laws on grounds of perceived equity or fairness). Indeed, *Bustamante* states that, in order to enhance a defendant's claim for derivative citizenship, circumstances surrounding the issuance of the *nunc pro tunc* must legitimately demonstrate "that an alien child had in fact been in the sole legal custody of his one naturalized parents prior to his eighteenth birthday." *Id*. at 401.

As further noted above, such a showing has not been made here. Although, as stated, no one admits that the Amended Decree was obtained simply to defeat the charge against Defendant, neither has anyone come forward to suggest that there was any other reason for that Decree. Moreover, the circumstances surrounding the issuance of the Amended Decree, namely that it was not sought until after the Defendant was charged with illegal reentry, strongly suggest that the Amended Decree was sought only to affect these proceedings. As such, the Court cannot conclude that the issuance of the Amended Decree legitimately calls into the question the validity of the 1994 Decree or the other evidence presented by the Government establishing that Defendant is, for purposes of the charged offense, an alien.

## IV.    CONCLUSION

The Court is mindful of the severe consequences for Defendant resulting from this decision.  Further, counsel for both the Government and Defendant have invested in the case so much, and such impressive effort, that it is hard to disappoint either side.  On these facts, and in view of the applicable law, however, the Court must **DENY** Defendant the relief requested and hold that, for purposes of these criminal proceedings, he is as a

matter of law an alien. A further hearing in this matter is set for Wednesday, July 7, 2010

at 11:00 am.

**IT IS SO ORDERED.**

Signed at Houston, Texas on this 29th day of June, 2010.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE